United States District Court
Southern District of Texas

**ENTERED**

July 23, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT                 SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Samuel Espinoza Rodriguez, | § |
| Petitioner, | § |
| | § |
| v. | § |
| | § |
| | § |
| Lorie Davis, | § |
| Director, Texas Department of | § |
| Criminal Justice, Correctional | § |
| Institutions Division, | § |
| Respondent. | § |

Civil Action H-18-2304

## Memorandum and Recommendation

Rodriguez is serving life in prison for aggravated assault with a deadly weapon and 50 years in prison for evading arrest with a motor vehicle. (*See* D.E. 16-37 at 90; D.E. 16-40 at 55.) Rodriguez filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Lorie Davis has moved for summary judgment. (D.E. 15.) The court recommends that Davis's motion for summary judgment be granted and Rodriguez's petition be denied with prejudice.

*1. Background*

On the night of December 29, 2011, Rodriguez went to a bar by himself. He was then on parole and prohibited from carrying a gun. He got into a fist fight with Jose Bribiescas at the bar. The bar manager asked Rodriguez to leave. Rodriguez returned ten minutes later with a gun and shot Bribiescas point blank in the chest.

Rodriguez drove away in his truck. Police officers found Rodriguez in his truck. Rodriguez sped away, and a road chase ensued. When officers stopped Rodriguez's truck, he fled on foot. Officers arrested him. A gun was found in his truck. Officers brought Rodriguez back to the bar, where the customers identified him as the shooter.

## 2. *Procedural Posture and Trial*

Rodriguez was indicted with felony charges of aggravated assault with a deadly weapon and evading arrest with a motor vehicle. The indictment contained enhancement paragraphs alleging his two prior felony convictions: a 1984 conviction for burglary of a building with intent to commit theft and a 1987 conviction for aggravated robbery with a deadly weapon. (D.E. 16-18 at 10.)

The court in the 182nd Judicial District of Harris County, Texas, held a pretrial hearing on February 4–5, 2013. (D.E. 16-23–16-24.) The court allowed Rodriguez to represent himself at trial after questioning him about his background, the charges, and the punishment he might face. (D.E. 16-23 at 5–8, 13–15; D.E. 16-24 at 9–10.)

Before the jury trial on May 13, 2013, the court heard additional pretrial matters. The court took under advisement Rodriguez's motion to quash the enhancement paragraphs of his indictment. (*See* D.E. 16-27 at 72.) The court stated that it would revisit the motion at the sentencing phase. *See id.*

Rodriguez made several other motions. Rodriguez argued that the State violated his due process rights by not disclosing a security camera recording of the shooting. (*See* D.E. 16-27 at 72–73; D.E. 16-18 at 202–03.) He argued that the State gave him insufficient notice when it re-indicted him, leaving him with no time to prepare his defense. (*See* D.E. 16-27 at 77; D.E. 16-18 at 209.) He also made a double jeopardy argument. (*See* D.E. 16-27 at 77; D.E. 16-18 at 205–10.) The court denied all of these motions. (*See* D.E. 16-27 at 77.)

Rodriguez moved to suppress the firearm based on chain of custody. (*See* D.E. 16-27 at 75–78; D.E. 16-18 at 220–21.) The court deferred a ruling on that motion until the firearm became an issue at trial. (D.E. 16-27 at 77–78.)

Rodriguez pleaded not guilty. (D.E. 16-27 at 80.) A four-day trial began on May 13, 2013. (*See* D.E. 16-27–D.E. 16-33.) The State's witnesses were Bribiescas, the bar owner, three eye-witnesses to the shooting, and five police officers. (*See* D.E. 16-27–16-31.) Rodriguez

2

testified. (*See* D.E. 16-29 at 59–105; D.E. 16-31 at 22.) He did not call any witnesses. *See id.*

Bribiescas identified Rodriguez as the person who shot him in the chest and testified to the following version of events. (*See* D.E. 16-29 at 26–41, 105–06.) Bribiescas was at the bar on the night of December 29, 2011, for his birthday party. When Rodriguez started to quarrel with Bribiescas's friend, Bribiescas intervened. Bribiescas intended to defuse the tension and offered Rodriguez a beer, but Rodriguez continued to confront Bribiescas. Rodriguez punched Bribiescas. Bribiescas punched back, and the two fell to the ground. The manager asked Rodriguez to leave. Rodriguez left the bar for a short time before coming back inside with a gun. Bribiescas did not realize that Rodriguez was back inside until Rodriguez placed a gun against his chest and fired the gun. Bribiescas soon lost consciousness. At the time Bribiescas was shot, he did not have anything in his hands other than a beer. Bribiescas testified that he believed Rodriguez intentionally shot him. Bribiescas's testimony was consistent with the other witnesses' testimony.

Rodriguez testified to the following version of the events. (*See* D.E. 16-29 at 59–72, 83.) Bribiescas initiated the brawl. Rodriguez found a gun on the floor of the bar. He exited the bar because he felt threatened. Rodriguez went to his car. There, he tried to fire the gun in the air to scare Bribiescas and the crowd inside the bar. The gun did not fire. Rodriguez saw two people standing in the parking lot with a knife pulled out. Those two people yelled menacing words at Rodriguez. He felt threatened and decided to go back inside the bar to get away from them. Once inside the bar, Rodriguez saw Bribiescas moving toward him with something in his hands. Rodriguez pointed the gun at Bribiescas. Rodriguez knew the gun was loaded but he did not think the gun would fire. Rodriguez pulled the trigger by accident and shot Bribiescas. Rodriguez left the bar in his truck. Rodriguez did not call the police.

When asked about the ensuing road chase, Rodriguez testified that he did not realize the cars following him were the police. He

tried to stop once he realized police officers were following him, but the breaks on his truck malfunctioned. Rodriguez's car ran into a curb and came to a full stop. Rodriguez admitted that he fled on foot before being caught by the police. (*See* D.E. 16-29 at 96–102.)

The jury reached a unanimous verdict on both counts: evading arrest in a motor vehicle and aggravated assault with a deadly weapon. (D.E. 16-29 at 137–39.)

At the punishment phase, Rodriguez was re-arraigned on the enhancement paragraphs. (*See* D.E. 16-31 at 7–10.) Rodriguez admitted that he was convicted of a felony in 1987. *Id.* at 9. He denied that he was convicted of a felony in 1984. *Id.* The State called an officer employed with the Harris County Sheriff's Office to testify about Rodriguez's prior conviction records. Rodriguez neither cross-examined the State's witness nor offered his own witness. The jury reached a unanimous verdict. (D.E. 16-31 at 36–38.) Rodriguez was sentenced to life in prison for aggravated assault and 50 years in prison for evading arrest with a motor vehicle. (D.E. 16-31 at 36; D.E. 16-37 at 90; D.E. 16-40 at 55.)

## 3. *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by

clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Where, as here, the highest state court denies a habeas petition without accompanying reasons, the court defers to the last reasoned state-court decision on the merits. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Langley v. Prince*, 926 F.3d 145, 159 (5th Cir. 2019) (applying *Sellers* to defer to the state appellate court's findings).

*4.   Analysis*

   *A.   State trial court's judicial bias*

Rodriguez argues that the state trial judge was biased against him. As a part of the claim, Rodriguez argues that a court document was falsified, which resulted in the appointment of a trial counsel that Rodriguez previously fired. The document at issue is a one-page document containing a request for court-appointed counsel and an order appointing counsel. (*See* D.E. 16-18 at 154.) The document shows that the trial judge re-appointed counsel that Rodriguez previously moved to have dismissed from his case. (*See* D.E. 16-18 at 149–52.)

The last reasoned state court decision found that Rodriguez was not deprived of due process by the appointment of his previously-appointed counsel. *Rodriguez v. State*, 491 S.W.3d 18, 33 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Rodriguez has not shown that the state court's finding is contrary to Federal law. The Sixth Amendment guarantees the right to counsel, but an indigent defendant does not have the right to have the State appoint his preferred counsel of choice. *Luis v. United States*, 136 S. Ct.

1083, 1089 (2016); *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015).

Rodriguez has not shown that the state court's finding is based on an unreasonable determination of the facts. He does not offer evidence of forgery. He states in conclusionary manner that the previously-appointed counsel had a conflict of interest. He does not specify on what grounds counsel's interests were in conflict with his. Rodriguez has not rebutted the presumption that the state court's finding is correct. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.")

Habeas relief is denied.

*B. Sentencing enhancements*

Rodriguez argues that the State's use of his prior convictions at the punishment phase of the trial was erroneous. He claims that he was never convicted of a felony in 1984, which is one of the two prior convictions that the State used to enhance his sentence.

The last reasoned state court decision found that Rodriguez failed to show his prior convictions were invalid or void. *Rodriguez*, 491 S.W.3d at 26. It also found that he did not request a hearing on his motion to quash, and the trial court was not required to hold a hearing. *Id.*

The state court decision is not based on an unreasonable determination of facts. At trial, Rodriguez introduced a certified record from Harris County which shows that he was convicted of both prior felonies that he now contests. (*See* D.E. 16-31 at 21; D.E. 16-33 at 66–69.) Rodriguez chose not to cross-examine the State's witness who testified about his prior records. (*See* D.E. 16-31 at 20.) He also chose not to object to the admission of the pen packet records of his prior convictions. (*See* D.E. 16-31 at 15, 19; D.E. 16-33 at 35–55.)

Rodriguez's claim lacks merit.

### C. *Trial counsel's conflict of interest*

Rodriguez claims that his trial counsel had conflicts of interest that forced him to represent himself.

The last reasoned state decision on the merits found that Rodriguez did not meet his burden to show that counsel was ineffective due to conflict of interest. *Rodriguez*, 491 S.W.3d at 29.

The state court's finding is presumed correct, and Rodriguez has not rebutted the presumption. *See* 28 U.S.C. § 2254(e)(1). Rodriguez has not offered any facts supporting his conflict-of-interest claim. Conclusory claims do not merit habeas relief. *See Koch*, 907 F.2d at 530.

### D. *Waiver of ineffective assistance of counsel claims*

Rodriguez argues that his appellate counsel was deficient for failing to file a motion for a new trial despite his clear request. An appellate lawyer was appointed for Rodriguez immediately following his trial on May 17, 2013, but Rodriguez nevertheless filed a *pro se* motion for new trial on May 22, 2013. (*See* D.E. 16-17 at 213, 220–22.) At an abatement hearing held in January of 2014, Rodriguez again insisted on representing himself on appeal. (*See* D.E. 16-25 at 4–8.)

The state habeas court's findings of fact and conclusions of law is the last reasoned state decision on the merits. It found that Rodriguez waived any subsequent claim of ineffective assistance of counsel because Rodriguez chose to represent himself and waived any ineffective assistance of counsel claims. (*See* D.E. 16-42 at 45, ¶¶ 20–21.) The state habeas court's findings of fact are presumed correct, and Rodriguez has not rebutted the presumption. *See* 28 U.S.C. § 2254(e)(1).

Rodriguez has not shown that the state habeas court's findings are contrary to clearly established Federal law. A petitioner claiming ineffective assistance during the post-trial, pre-appeal period must show that his counsel's decision not to move for a new trial was objectively unreasonable and that there is a reasonable probability that had counsel moved for a new trial, the trial court would have

granted one. *See McAfee v. Thaler*, 630 F.3d 383, 394 (5th Cir. 2011).

Here, Rodriguez fails to show on what grounds a new trial would have been granted in his favor. His *pro se* motion for a new trial was based on allegations of prosecutorial misconduct: (1) the prosecution asked the jury to consider evidence of murder; (2) the prosecution failed to comply with discovery requests; and (3) the prosecution made *ex parte* contacts with the court. (*See* D.E. 16-17 at 220–22.) Neither the record, the motion, nor the post-conviction pleadings contain any facts or evidence that support the grounds on which he claims a new trial should have been granted. Rodriguez has not shown that the court would have granted his motion for a new trial had his appellate counsel assisted him.

Rodriguez's claim does not merit habeas relief.

### E. Brady *violation as to video recording of the shooting*

Rodriguez argues that the State unconstitutionally withheld the bar's security camera footage from him. It was established at trial that the owner of the bar gave the investigating officer what he thought was a copy of the security camera recording on the night of the shooting. (*See* D.E. 16-27 at 73–74.) The owner of the bar testified that he attempted to copy the security camera footage onto a flash drive and gave it to an investigating police officer. (*See* D.E. 16-29 at 9–12.) The officer placed the flash drive with other evidence in the Houston Police Department's property room. (*See* D.E. 16-29 at 17–18.) It was later discovered that the drive was empty. *Id.* By the time the officer returned to the bar, the security system had already recorded over the footage. *Id.* The owner of the bar and the investigating police officer testified that the failure to copy the security footage was a mistake. (*See* D.E. 16-29 at 9–12, 15–21.)

The last reasoned state decision found that Rodriguez's due process rights were not violated because he failed to show that the police acted in bad faith. *Rodriguez*, 491 S.W.3d at 31.

The state court decision is not contrary to clearly established Federal law. Permanent loss of potentially useful evidence does not

deny a defendant's due process right unless the defendant shows that the police acted in bad faith in failing to safekeep the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *see Allen v. Collins*, 987 F.2d 771 (5th Cir. 1993) (affirming district court's denial of habeas relief where the petitioner "has alleged no concrete acts of bad faith" by the police in failing to preserve evidence). Here, Rodriguez has not shown that the copying error was intentional. Thus, the inadvertent loss of the video evidence did not violate Rodriguez's due process rights.

Rodriguez raises no claim of constitutional violation under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* held that the prosecution violates a defendant's due process right to a fair trial if it withholds material exculpatory evidence, regardless of whether the prosecution acted in bad faith. *Brady*, at 87. Here, the prosecution lost the evidence, which presents a different problem. *See Youngblood*, 488 U.S. at 57; *see also United States v. Bakhtiar*, 994 F.2d 970, 975 (2d Cir. 1993) (inadvertently lost evidence requires a different analysis because, unlike a *Brady* error, a new trial cannot cure the problem and it is more difficult to determine the materiality of the lost evidence). It is impossible to determine whether the security camera footage not provided to Rodriguez was material or exculpatory because the footage was lost. Rodriguez has not, and cannot, show that the State withheld material favorable evidence. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Rodriguez has not raised a violation of his constitutional rights under *Brady*.

Habeas relief is not available.

### F. *Truthfulness of Bribiescas's testimony*

Rodriguez argues that Bribiescas lied when he testified at trial about whether he has ever assaulted someone and if he lost his consciousness after being shot.

The last reasoned state court decision found that the complained-of testimony had no effect on Rodriguez's conviction or sentence and are at best collateral to Rodriguez's conviction. *Rodriguez*, 491 S.W.3d at 32. The court presumes the state court's findings to be correct. *See* 28 U.S.C. § 2254(e)(1).

The state court findings are not contrary to clearly established Federal law. Factual discrepancies in witness testimony do not constitute a constitutional violation unless the State knowingly uses the untruthful testimony. *See Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996) ("A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected."). Habeas relief can be granted only upon a petitioner's showing that "(1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material." *Faulder*, 81 F.3d at 519.

Rodriguez has shown neither that Bribiescas's testimony was false nor that the State knew of any falsity. Rodriguez offered no evidence to support his claim that Bribiescas has a history of assault. At trial, Rodriguez introduced some evidence in support his argument that Bribiescas was seen walking around after being shot. (*See* D.E. 16-28 at 23–25; D.E. 16-33 at 61.) Rodriguez had full opportunity to cross-examine and present his argument, but the jury still found him guilty of aggravated assault. The testimony that Bribiescas lost consciousness after being shot was not material to Rodriguez's conviction.

Habeas relief is denied.

G. Faretta *hearing*

Rodriguez argues that the pretrial hearing to determine whether he could represent himself at trial was defective because he only intended to waive counsel for indictment no. 136099 (aggravated assault) and not for indictment no. 136098 (evading arrest). Rodriguez claims that he was not fully informed about his

rights and that the court and the State misinformed him about the charges he faced.

The last reasoned state court decision found that the trial court adequately admonished Rodriguez of the disadvantages of self-representation, and Rodriguez waived counsel for both charges of aggravated assault and evading arrest. *See Rodriguez*, 491 S.W.3d at 28–29.

The state court decision is neither contrary to clearly established Federal law nor based on an unreasonable determination of facts. Under *Faretta v. California*, 422 U.S. 806 (1975), a defendant who exercises his right to represent himself must first be made aware of the risks of defending his case without counsel. *Id.* at 835; *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986). Once a defendant moves to represent himself, the court is required to hold a *Faretta* hearing to determine whether the defendant's waiver of his right to appointed counsel is knowing and intelligent. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008). At a *Faretta* hearing, the court must ask the defendant if he understands the crimes with which he is charged and the sentence he may face. *See McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985) ("[The court] must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving."). Other relevant factors include defendant's age, education, background, experience, conduct, and whether any coercion or mistreatment of the defendant caused the waiver. *See id.*

Rodriguez's *Faretta* hearing met the constitutional requirements. The state trial court held the *Faretta* hearing on February 4–5, 2013. (*See* D.E. 16-23.) The State read to Rodriguez its findings on probable cause:

> Suspect Samuel Rodriguez had a fight with the complainant in a bar. Suspect returned with a pistol and entered the licensed premises of the bar and confronted the complainant, pointed the pistol at the complainant, and then fired one shot

> striking the complainant in the left lower chest
> area. Witnesses observed the act. The suspect fled
> and was stopped by officers. Suspect was returned
> to the scene and [identified] by witnesses. The
> pistol was recovered from the vehicle. Location of
> the bar is within Harris County, Texas, and this
> occurred on December 29th, 2011.

(D.E. 16-23 at 4–5.)

Rodriguez asked for clarification of the charges against him. The State answered that the charges are in indictment no. 1356099. (D.E. 16-23 at 8.) At the time of the pretrial hearing, indictment no. 1356099 included facts supporting both charges of aggravated assault and evading arrest. (D.E. 16-18 at 10.) The indictment also included Rodriguez's two prior convictions as possible enhancements. *Id.* Rodriguez stated that he understood the charges and that he could face up to life in prison. (*See* D.E. 16-23 at 10–11.)

The court asked Rodriguez about his background, education, mental health, and familiarity with criminal law. (D.E. 16-23 at 5–8, 13–15.) Rodriguez told the court that he voluntarily and knowingly decided to represent himself and that he waived the right to effective assistance of counsel. (D.E. 16-23 at 14.) The court also heard testimony from Rodriguez's appointed counsel and her investigator. (D.E. 16-24 at 6–7.) The court found that Rodriguez could represent himself and denied the appointment of a stand-by counsel. (D.E. 16-24 at 9–10.)

Rodriguez has not shown that the court failed to consider any factor that must be considered in *Faretta* hearings. The record shows that Rodriguez was aware that he was charged with evading arrest and assault with a deadly weapon. Rodriguez also knew that he could be sentenced to life in prison if he were to be convicted. Therefore, Rodriguez's claim does not merit federal habeas relief.

### H. Denial of expert witness and an Ake hearing

Rodriguez argues that it was error for the court to deny his motion for a weapons expert witness and an *ex parte* hearing regarding the motion.

The state habeas court found that Rodriguez did not request an ex parte hearing on his motion for an expert witness. (D.E. 16-42 at 45, ¶ 23.) It also found that Rodriguez only made undeveloped assertions in support of his motion and did not make the required showing to have an expert witness appointed for him. (D.E. 16-42 at ¶¶ 24–25.)

Rodriguez has not shown that the state habeas court's findings are contrary to clearly established Federal law or based on an unreasonable determination of facts. An indigent defendant seeking to hire an expert witness at state expense must first show that the expert witness testimony is necessary to establish a significant factor of his defense. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1 (1985) (finding no violation of a habeas petitioner's due process rights where the petitioner "offered little more than undeveloped assertions that the requested assistance would be beneficial"); *cf. Ake v. Oklahoma*, 470 U.S. 68, 82–83 (1985) (discussing the preliminary showing that would entitle defendant to psychiatric expert's assistance).

In *Scott v. State of La.*, 934 F.2d 631 (5th Cir. 1991), an indigent petitioner was denied habeas relief on a similar claim because he did not show that an examination of evidence by an expert was important and subject to varying expert opinion. *Scott*, 934 F.2d at 633 (construing *White v. Maggio*, 556 F.2d 1352, 1356 (5th Cir. 1977)). *Scott* is directly applicable to this case. Like in *Scott*, testimony by the eye-witnesses formed "the crux of the prosecution's case" at Rodriguez's trial. *See Scott*, 934 F.2d at 633. Rodriguez has not shown, and the record does not show, that ballistics evidence was critical or even relevant to his conviction. Rodriguez's motion only made a bare assertion that an expert witness's services would be essential for his defense. (*See* D.E. 16-18 at 276.)

The lack of a hearing did not violate Rodriguez's due process rights. As the state habeas court found, Rodriguez did not even request a hearing in his motion. (*See* D.E. 16-42 at 45, ¶ 23; D.E. 16-18 at 276.)

13

Habeas relief is denied.

### I. Shackles at trial

Rodriguez argues that the trial court abused its discretion by placing him in shackles during his trial. Rodriguez claims that he was deprived of his right to be presumed innocent. He also claims that he could not effectively defend himself as a *pro se* defendant because he had to remain seated to prevent the jury from seeing his shackles.

The state habeas court found that the trial court did not abuse its discretion because Rodriguez "had multiple disciplinary infractions for violence leading up to trial, including one stating he was a safety concern to staff." (D.E. 16-42 at 43, ¶ 6.) The state habeas court also found that the shackles were not visible to the jury, and Rodriguez did not object to the ankle shackles on the record. (D.E. 16-42 at 43, ¶¶ 7, 9–10.)

The state habeas court's findings are neither contrary to Federal law nor based on an unreasonable determination of the facts. Courts may shackle a defendant "if there is a particular reason to do so," in either the guilt or penalty phase of a trial. *Deck v. Missouri*, 544 U.S. 622, 627, 632 (2005). Here, as the state habeas court found, Rodriguez posed a safety concern. The record shows that Rodriguez was disciplined shortly before trial for causing "a threat to safety of staff and facility" at his place of detention. (D.E. 16-42 at 40.) Such safety concerns constitute good cause to restrain defendants at trial. *See Deck*, 544 U.S. at 633 (2005); *United States v. Ayelotan*, 917 F.3d 394, 401 (5th Cir. 2019) (finding no constitutional violation where the shackles were not visible to the jury, and the defendants' behavior at a previous hearing created security concerns). Further, Rodriguez's restraints were not visible to the jury. Under these facts, Rodriguez's constitutional rights were not violated. *See Ayelotan*, 917 F.3d at 401.

Habeas relief is denied.

*J.  Trial judge's remarks during voir dire*

Rodriguez argues that the trial judge violated his constitutional rights by comparing him to the Boston bombers in the presence of the jury. Rodriguez claims that the judge's remarks improperly influenced the jury.

The state habeas court found that Rodriguez failed to show "that the jurors on his panel could not presume him innocent." (D.E. 16-42 at 44, ¶ 13.)

The state habeas court's finding is not based on an unreasonable determination of the facts. At voir dire, the trial judge stated:

> The man on trial is presumed to be innocent until and unless proven guilty by the prosecution. It is the right thing to do in this case, in every case in this country. Think about this. We had that scary situation about three weeks ago in Boston. The Boston bombers. They chased him down and got one of them. He is allowed to have 12 jurors hear his case. Until they prove it, he is presumed to be innocent until proven guilty. The State thinks they got the right guy. Good for them. Jurors, your job is to say, if you think that is so, prove it to me in the course of the trial. If you don't prove it, I will find this man not guilty. It is the right thing to do. The question is: If you cannot do that job in good faith, let me know by a show of hands.

(D.E. 16-27 at 22.) The trial judge did not compare Rodriguez to the Boston bombers. The judge only used the example to illustrate the presumption of innocence given to a defendant, even in the most serious of cases, and the State's burden to show the defendant's guilt beyond a reasonable doubt. The record is thus consistent with the state habeas court's finding.

The state habeas court's finding is not contrary to Federal law. A claim that the judge acted to influence the jury must be supported by "plain and clear" evidence to constitute a due process violation. *See Kowalsky v. United States*, 290 F.2d 161, 163 (5th Cir. 1961). Here, there was no evidence of a due process violation. Rodriguez made no showing that the trial judge's remark biased him or that the

judge acted to influence the jury. The remark did not violate Rodriguez's due process right to a fair trial.

Therefore, Rodriguez's claim does not merit habeas relief.

### K. Motion for a new trial

Rodriguez argues that the trial court abused its discretion in failing to rule on his motion for a new trial. Rodriguez filed a motion for a new trial on June 3, 2013. (*See* D.E. 16-18 at 279.) The state court did not expressly rule on his motion.

The state habeas court found that under Texas law a motion not ruled on by written order is deemed denied. (D.E. 16-42 at 44, ¶ 17.) It found that the trial court did not abuse its discretion in denying Rodriguez's motion for a new trial by default. *See id.* at ¶ 18.

The state habeas court's determination of facts is presumed correct, and Rodriguez has not rebutted the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). As discussed above, Rodriguez has not shown a viable ground for a new trial. *See supra* part 4.D.

Habeas relief is denied.

### L. Court reporter's failure to include a side-bar discussion

Rodriguez argues that the court reporter failed to record the bench conferences.

The last reasoned state court decision found that Rodriguez waived his argument regarding the reporter's failure to record bench conferences because he did not raise any objection at trial. *See Rodriguez*, 491 S.W.3d at 34.

Rodriguez has not shown that the state court's decision is contrary to clearly established Federal law. An indigent defendant has no constitutional right to the portions of the transcript that are not "germane to consideration of the appeal." *See Draper v. State of Wash.*, 372 U.S. 487, 495 (1963); *Kunkle v. Dretke*, 352 F.3d 980, 986 (5th Cir. 2003). A claim that the transcript was incomplete is not cognizable in a federal habeas review unless the petitioner can show that the omitted portion of the transcript would have helped

the petitioner reveal an error of constitutional magnitude. *See Kunkle*, 352 F.3d at 985–86.

Here, Rodriguez makes no showing of what discussions the court reporter allegedly omitted that led to a constitutional error. The trial transcripts do not raise any suspicion surrounding the circumstances in which the off-the-record discussions took place. (*See, e.g.*, D.E. 16-29 at 16; D.E. 16-31 at 5.) Rodriguez's claim does not raise a cognizable claim of constitutional violation.

Habeas relief is not available.

### M. Denial of neutral and fair appellate review

Rodriguez argues that the state court of appeals denied him a neutral and fair appellate review. Rodriguez claims that the state appellate court's adoption of the State's summary of his arguments demonstrates that the court was prejudiced against him.

Rodriguez's claim does not raise a violation of his constitutional rights. To secure federal habeas relief on the basis of judicial impartiality, the petitioner must "establish that a genuine question exists concerning [the court's] impartiality." *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899, 909 (1997)); *see also Richardson v. Quarterman*, 537 F.3d 466, 474 n. 4 (5th Cir.2008) (holding that the constitutional due process requirements regarding judicial impartiality are narrower than the requirements for recusal); *Pierre v. Cain*, No. CIV.A. 11-2151, 2012 WL 909927, at *8 (E.D. La. Jan. 31, 2012) (denying habeas petitioner's claim that he was denied the right to fair appellate review). The mere fact that the state appellate court agreed with the State's interpretation of his arguments does not constitute an error. The court's own review of the record does not show that the appellate court was biased against Rodriguez.

Rodriguez has not shown any error by the appellate court, much less a constitutional one. *See Evans v. McCotter*, 790 F.2d 1232, 1238 n.6 (5th Cir. 1986) ("[T]he alleged error must violate the federal constitution or federal laws in order for the writ [of habeas corpus] to be granted.").

Habeas relief is denied.

## 5. Conclusion

The court recommends that Davis's motion be granted and Rodriguez's petition be denied with prejudice. Any remaining motions are terminated as moot. Rodriguez has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. Similarly, Rodriguez has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on July 23, 2019.

Peter Bray
United States Magistrate Judge